UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**NICHOLAS ADDISON**                                                                                    **PETITIONER**
**ADC #162451**

**V.**                                        **NO. 5:18-CV-00142-BRW-JTR**

**WENDY KELLEY, Director,**
**Arkansas Department of Correction**                                                **RESPONDENT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Nicholas Addison ("Addison"), an Arkansas Department of Correction ("ADC") inmate. *Doc. 2*. Before addressing Addison's habeas claims, the Court will review the procedural history of the case in state court.

1

On June 5, 2017, Addison pled guilty to robbery and battery in the first degree in Poinsett County Circuit Court.¹ *State v. Addison*, Poinsett County Circuit Court No. 56CR 2016-391. *Doc. 2 at 16, 19; Doc. 11-1* (change of plea transcript). The trial court imposed the sentence agreed to by the parties, as part of the plea agreement, and Addison was sentenced as a habitual offender. For the robbery, he was sentenced to twenty years in the ADC, plus a ten-year suspended sentence. For the battery, he was sentenced to a concurrent ten-year term, plus a ten-year suspended sentence. Sentencing Order, *Doc. 2 at 23-25*; *Doc. 11-1 at 8*.

By entering an unconditional guilty plea, Addison waived the right to challenge his conviction on direct appeal.²

---

¹ The "official account" of the offenses committed by Addison on July 12, 2016, indicates that after he was unable to get the victim to pay him the amount owed on a $50 debt, Addison became agitated, pulled a gun from his waistband, struck the victim in the head with it, and "it just went off," wounding the victim. Addison then pulled a knife and threatened to cut the victim's throat, commenting: "Might as well finish him. He's going to die anyway." Two juvenile witnesses, who provided corroborating testimony, also described how Addison refused to call an ambulance for the victim and continued cleaning the crime scene with bleach and water, warning them that if they talked to police, he would come for them. *Doc. 2 at pp. 36, 41*.

The victim called his brother shortly before Addison attacked him and let his brother know he was in an apartment with Addison. The victim's brother and his mother went to the apartment shortly after the attack. They knocked and kicked on the door to the apartment. Finally, Addison opened the door, holding the victim in front of him, who was bleeding from the mouth and holding his chest with his hand. *Doc. 2 at p. 41*.

As part of the plea negotiations, the original charge of attempted murder was reduced to robbery. The record is unclear regarding the factual basis for the robbery charge.

² *See* Ark. R. App. P. Crim. 1(a) ("Except as provided by ARCrP 24.3(b) there shall be no appeal from a plea of guilty or nolo contendere."); Ark. R. Crim. P. 24.3(b) (with the court's approval and the prosecutor's consent, "a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment" to review adverse

2

On August 4, 2017 and August 18, 2017, Addison filed petitions for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure.[3] *Doc. 2 at 50-54*. As grounds for relief, Addison argued that his trial counsel was ineffective for: (1) failing to perform an adequate investigation to develop a defense to prove Addison's actual innocence[4] and to file pretrial motions to challenge the State's case; (2) failing to develop witness statements and testimony to support Addison's innocence; and (3) failing to file a motion objecting to Addison being jailed for over nine months before the trial date, in violation of the Speedy Trial requirements of Ark. R. Crim. P. 28. *Id. at 53*.

On September 5, 2017, the trial court summarily denied Addison's Rule 37 Petition, along with his Motion for Transcript and Motion to Proceed In Forma Pauperis. In doing so, the trial court noted that: (1) Addison had presented "mere

---

determinations of pretrial motions: (1) to suppress seized evidence or a custodial statement; (2) to dismiss a charge as untimely; or (3) challenging the constitutionality of the criminal statute at issue.

[3] The two Petitions appear to be identical. *Doc. 7-4 at 1-5* (August 4, 2017 filing); *Doc. 2 at 50-55* (August 18, 2017 filing). Addison contends the August 18, 2017 filing is the only Petition relevant to his federal habeas claim. *Doc. 9 at 2-3*.

[4] As factual support for his contention that he was actually innocent of shooting the victim, Addison alleged that: (1) a sixteen-year-old named "Terry" admitted to the shooting and was willing to testify in Addison's defense; and (2) his aunt, Tamara Shephard attempted to contact his trial counsel to make him aware of a police department video in which "Terry" admitted shooting the victim. *Doc. 7-4 at 3* (Rule 37 petition). Other than Addison's after-the-fact allegations, there is no indication that any such video exists.

conclusory allegations;" (2) the Forensic Report conducted pursuant to a court-ordered mental evaluation revealed that Addison did *not* suffer from a mental disease or defect, had the capacity to understand the criminal proceedings, and was able to assist in his own defense;[5] (3) Addison knowingly and voluntarily pled guilty; and (4) Addison was sentenced in accordance with the Agreed Sentence Recommendation. *Doc. 2 at 59*.

Addison did not appeal the trial court's denial of postconviction relief. *See Petition, Doc. 2 at 2, 5-12* (acknowledging he made no attempt to appeal the trial court's rejection of his Rule 37 petition).

On May 29, 2018, Addison filed this *pro se* § 2254 habeas action. He alleges that his trial counsel provided constitutionally ineffective representation by: (1) providing deceptive advice about the consequences of his guilty plea, including advising him that if he pled guilty he would be sentenced to 120 months, not 240 months, with an additional 120 months as a suspended sentence; (2) failing to investigate, develop or preserve certain defenses and failing to file any pretrial motions, such as motions to suppress inconsistent witness statements and to challenge speedy trial violations; (3) failing to discover and prove Addison's actual

---

[5] Addison's Rule 37 Petition did not raise any issue regarding his mental condition. Thus, it is unclear why the trial court addressed Addison's lack of mental disease or defect in the Order denying Rule 37 relief.

innocence; and (4) denying Addison the opportunity to assert an affirmative defense related to his mental health or competence, under Ark. Code Ann. § 5-2-305(b),[6] and *Ake v. Oklahoma*, 470 U.S. 68, 74, 105 S.Ct. 1087 (1985) (holding that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one."). Doc. 2 at 5-10.

Respondent argues that Addison's habeas claims should be dismissed because they are: (1) procedurally defaulted; (2) without merit; and (3) waived as a result of his guilty plea. Doc. 7. Addison has filed a Reply. Doc. 9. Thus, the issues are joined and ready for disposition.

For the reasons discussed below, the Court recommends that all of Addison's habeas claims be denied, and the case dismissed, with prejudice.

## II. Discussion

**A.    All of Addison's Claims Are Procedurally Defaulted**.

A habeas petitioner must "fairly present" his claims in state court before seeking § 2254 relief in federal court. *Murphy v. King*, 652 F.3d 845-848-49 (8th

---

[6] This statutory provision outlined the procedure for a criminal defendant to obtain a mental health evaluation. It was repealed and replaced in 2017. *See* Acts of 2017, No. 472, § 5.

Cir. 2011); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus ... shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"); *Perry v. Kemna*, 356 F.3d 880, 886 (8th Cir. 2004) ("To avoid a procedural default, a habeas petitioner must 'present the same facts and legal theories to the state court that he later presents to the federal courts.'"); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir. 1997) ("[B]oth the factual grounds and legal theories on which the claim is based must have been presented to the highest state court in order to preserve the claim for federal review.").

By exhausting all available state court remedies, a habeas petitioner gives the State that convicted him an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)(omitting internal quotations

When a petitioner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). When a procedural default occurs, federal habeas review of the claim is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claim will result in a "fundamental miscarriage of justice." *Id*. at 750.

Addison failed to include Claims 1 and 4 in his Rule 37 Petition and failed to appeal the trial court's denial of Claims 2 and 3. Thus, all four of the ineffective assistance of counsel claims Addison is asserting in this action are procedurally defaulted.

> **B.    Addison Has Failed to Establish That Any Exception Applies to Excuse His Procedural Default of Those Claims.**

The Court still may proceed to address the merits of Addison's procedurally defaulted claims *if* he can demonstrate the "cause and prejudice" or "actual innocence" exceptions to procedural default. *See Washington v. Delo*, 51 F.3d 756, 760 (8th Cir. 1995) (cause and prejudice exception generally requires a showing of "some external impediment" that prevented the raising of a habeas claim, and that the "obstacle caused actual prejudice."); *Schlup v. Delo*, 513 U.S. 298, 327, (1995) (actual innocence exception requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.").

### 1. Mental Condition

The Court first considers whether Addison's alleged mental condition might excuse his procedural default, based on his assertion that he "has been treated almost continuously" with "mental health meds." *Doc. 2 at 5*. Serious mental illness *may* constitute both cause and prejudice necessary to excuse procedural default. *Gordon v. Arkansas*, 823 F.3d 1188, 1196-97 (8th Cir. 2016) (*quoting Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999)). However, a "conclusive showing of incompetence is required before mental illness can constitute cause." *Nachtigall v. Class*, 48 F.3d 1076, 1081 (8th Cir. 1995). Addison must also show that his mental illness "interfered with" his "ability to appreciate" his position and to "make rational decisions" during the period he should have been pursuing post-conviction relief. *Gordon*, 823 F.3d at 1197 (omitting citations); *see Nachtigall v. Class*, 48 F.3d 1076, 1081 (8th Cir. 1995) ("Mental illness and legal competence are not identical, nor are all mentally ill people legally incompetent.")

First, there is *nothing* in the record to support a finding that Addison suffered, *at any time*, from a serious mental illness, much less one that interfered with his ability to pursue postconviction proceedings during the relevant time frame. On April 12, 2017, approximately two months before his June 5 guilty plea, Addison had a court-ordered mental health evaluation to determine his fitness to proceed to

trial.[7] The clinical psychologist who conducted the evaluation diagnosed Addison with antisocial personality disorder[8] and a history of substance abuse, but found no evidence that Addison was suffering from any mental disease or defect at the time of the alleged offense. After the results of the Forensic Report established no factual support for any defense based on Addison's lack of capacity or inability to proceed, Addison apparently elected to enter a guilty plea.

In addition, Addison's alleged mental health issues did *not* prevent him from filing a timely Rule 37 petition, other motions with the trial court after his Rule 37 petition was denied,[9] or this habeas action. This seriously undercuts his bare assertion that his failure to appeal the trial court's denial of post-conviction relief

---

[7] Addison has attached to his habeas Petition what appears to be a complete copy of the Forensic Report. *Doc. 2 at pp. 27, 29-40*.

[8] Stedman's Medical Dictionary defines antisocial personality disorder as: "1. an enduring and pervasive pattern characterized by continuous and chronic antisocial behavior with disregard for and violation of the rights and safety of others, beginning before the age of 15; early childhood signs include chronic lying, stealing, fighting, and truancy; in adolescence there may be unusually early or aggressive sexual behavior, excessive drinking, and use of illicit drugs, such behavior continuing in adulthood; and 2. a DSM diagnosis that is established when the specified criteria are met."
A personality disorder is viewed differently from a mental disease or defect. *See, e.g., Parkus v. Delo*, 33 F.3d 933, 939, n. 6 (8th Cir. 1994) (observing that "the law draws a critical distinction between antisocial personality disorders, which do not relieve the defendant from criminal responsibility, and mental diseases or defects, which do.").

[9] For example, on March 7, 2018, Addison filed an Amended Petition/Memorandum of Law to Petition for Reduction of Sentence, Motion to Compel and/or Expedite Ruling, Motion for Appointment of Counsel, and Petition for Leave to Proceed *In Forma Pauperis*. The trial court summarily denied all three motions on March 15, 2018. *Doc. 7-5*.

had anything to with an alleged mental condition or medications he was taking to treat such a condition.

Thus, the Court concludes that Addison has failed to satisfy his burden to establish either cause or prejudice for his procedural default based on his alleged mental illness.

### 2. The *Martinez* Equitable Exception

Addison also argues that his filing a Rule 37 petition entitles him to excuse *all* his procedurally defaulted claims, apparently relying on *Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012).[10] This argument fails. As to Claims 2 and 3, Addison's failure to appeal the trial court's denial of Rule 37 relief means that he is not even entitled to an analysis, based on *Martinez*, to determine whether the default may be excused and the claims considered on the merits. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (recognizing *Martinez* is not applicable to excuse

---

[10] As applied in Arkansas habeas cases, the *Martinez* exception only allows a federal court "to find 'cause,' thereby excusing a habeas petitioner's procedural default, where: (1) the claim of ineffective assistance of trial counsel was a 'substantial' claim; (2) the 'cause' consisted of there being 'no counsel' or only 'ineffective' counsel during the state collateral review proceeding; and (3) the state collateral review proceeding was the 'initial' review proceeding with respect to the 'ineffective-assistance-of-trial-counsel claim.'" *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014) (*quoting Trevino v. Thaler*, 569 U.S. 413, 423, 133 S.Ct. 1911, 1918 (2013); *see Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013) (applying *Martinez* and *Trevino* to Arkansas proceedings).

default of ineffective assistance claims that were litigated in an initial review post-conviction proceeding, but not preserved in the post-conviction appeal).

As to Claims 1 and 4, to excuse his procedural default, Addison must demonstrate that each claim is substantial. This requires a showing by Addison that each claim (1) has "some merit"; *and* (2) is supported by at least some facts. *Martinez,* 132 S.Ct. at 1318-19.

### (a) Claim 1

Addison asserts that his trial counsel provided constitutionally ineffective advice about the length of the sentence Addison faced if he pled guilty. He fails to demonstrate that this claim has at least some merit and a factual basis.

Other than his bare assertion, Addison presents no evidence his trial counsel provided inaccurate or misleading evidence about the sentence Addison faced if he pled guilty, pursuant to the *plea agreement*. Additionally, at his change of plea hearing, Addison told the trial court that he was satisfied with the services of his attorney. *Doc. 11-1 at pp. 6-7.* This seriously undercuts any assertion of ineffective performance.

Even assuming Addison's trial counsel provided misleading advice regarding the sentence, the record shows that Addison received accurate advice, both orally and in writing, about his likely sentence before he pled guilty to the offenses. The transcript from the change of plea hearing demonstrates that the trial court accurately

11

and fully advised Addison of the sentence he faced before accepting Addison's guilty plea:

> The sentence recommendation provides that, as to the robbery charge, you're to be sentenced to a term of imprisonment of 240 months in the Arkansas Department of Corrections followed by a period of suspended imposition of sentence for 120 months; . . .
>
> And, on the battery first degree charge, you are sentenced to 120 months in the Arkansas Department of Corrections followed by a period of suspended imposition of sentence for 120 months; . . . .

*Doc. 11-1 at p. 8*. In addition, Addison was provided with a written copy of the Sentencing Recommendation, which he signed. *Id. at p. 6*.

Even if Addison could show deficient performance on the part of his attorney, he makes no allegations regarding prejudice. To establish *Strickland*[11] prejudice, in the context of his guilty plea, Addison must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985). Addison fails to make any showing of prejudice connected to his attorney's alleged ineffective assistance of counsel. Nor can he, since he pled guilty *after* being accurately and fully informed on the sentence he would receive by the trial court. *See also United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009) (inaccurate

---

[11] *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052 (1984).

advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range."). Addison fails to present facts to support either inadequate performance or prejudice.

Because Addison has failed to demonstrate that Claim 1 is a substantial ineffective assistance of trial counsel claim, the *Martinez* equitable exception will not save this claim from procedural default.

### (b) Claim 4

Addison claims that his trial counsel provided constitutionally ineffective counsel by inadequately exploring Addison's mental fitness to proceed to trial. However, he fails to demonstrate that this claim is *substantial*, which is a precondition for the Court to reach and consider the claim on the merits.

First, the record makes it clear there is no factual basis for this claim. As discussed above, the trial court ordered Addison to undergo a court-ordered mental health evaluation. The results of the mental evaluation provided no factual basis for his trial counsel to argue, as a defense, that Addison suffered from a mental disease or defect. Addison's vague allegations fail to explain either what his trial counsel should have done differently or how Addison suffered any prejudice.

In addition, this claim is foreclosed by Addison's subsequent guilty plea.

13

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tolett v. Henderson*, 411 U.S. 258, 267 (1973).

Because Addison has failed to demonstrate that Claim 4 is a substantial ineffective assistance of trial counsel claim, the *Martinez* equitable exception does not provide any basis for saving this claim from procedural default.

### 3. Actual Innocence

Finally, the Court considers whether Addison has presented "new evidence" of his "actual innocence" that might excuse his habeas claims being procedurally barred. In *McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924, 1928 (2013), the Court explained that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to overcome a procedural bar. The Court cautioned that:

> tenable actual-innocence gateway pleas are rare: A petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.* (*citing Schlup v. Delo*, 513 U.S. 298, 329 (1995), and *House v. Bell*, 547 U.S. 518, 538 (2006)) (omitting quotations); *see also Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) ("Actual innocence means factual innocence, not mere legal insufficiency.") (internal quotations and alterations omitted); *Cagle v. Norris*, 474

F.3d 1090, 1099 (8th Cir. 2007) ("in non-capital cases the concept of actual innocence is easy to grasp, because it simply means the person didn't commit the crime.").

The actual-innocence exception requires a habeas petitioner to come forward with "new reliable evidence" which was "not available at trial through the exercise of due diligence." *Schlup*, 513 U.S. at 324. The law is clear that, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316; *see Nooner v. Hobbs*, 689 F.3d 921, 937 (8th Cir. 2012) (when habeas petitioner fails to present new, reliable evidence of innocence, "it is unnecessary to conduct a further *Schlup* analysis").

Addison presents *no new evidence of innocence*. At best, he raises only speculation and conjecture about potential witnesses and unexplored defenses, all of which would have been available to Addison at the time of his guilty plea.

Additionally, Addison's actual innocence claim is controverted by his admission of guilt, both, generally, by pleading guilty, and specifically, by stating that he was the person who committed the offenses to which he pled guilty. During the plea hearing, the trial court asked Addison: "Are you pleading guilty to robbery [and battery first degree] because in truth and fact you did commit that offense?" *Id*.

15

at 7. Addison answered "Yes." *Id*.

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citations omitted); *see also Weeks v. Bowersox*, 119 F.3d 1342, 1355 (8th Cir.1997) (Loken, J., concurring) ("[T]here is an inherent paradox in the notion that someone who has stood in open court and declared, 'I am guilty,' may turn around years later and claim that he deserves to pass through the actual innocence gateway."); *McCall v. Benson*, 114 F.3d 754, 758 (8th Cir. 1997) (even if a prisoner attempted to show actual innocence, "in light of his guilty plea, such an attempt would be unpersuasive.").

Addison has failed to meet the demanding actual-innocence standard. Thus, he cannot use that legal theory to excuse his procedural default.[12]

---

[12] Of course, Addison's failure to establish actual innocence to excuse his procedural default means that he also cannot make the "extraordinarily high" showing required to establish a free-standing actual innocence claim. *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014) (omitting citations and internal quotations) (explaining that free-standing actual innocence claim, if recognized, would require "more convincing proof" that than the "gateway" standard for procedurally defaulted claims).

## III. Conclusion

Because Addison's federal habeas claims are procedurally defaulted,

IT IS RECOMMENDED THAT:

1. The 28 U.S.C. § 2254 Petition for a Writ of Habeas Corpus, *Doc. No. 2*, be DENIED, and this case be DISMISSED, WITH PREJUDICE; and

2. A Certificate of Appealability be DENIED. See 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

DATED this 9th day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE